UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JONATHAN B. KREISBERG, Regional Director of Region 34 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>    Petitioner,<br><br>v.<br><br>PRESSROOM CLEANERS, INC.,<br><br>    Respondent. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    3:12-cv-01013-WWE<br>:<br>:<br>:<br>: |

## MEMORANDUM OF DECISION ON PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION

Petitioner Jonathan Kreisberg, Regional Director of Region 34 of the National Labor Relations Board, seeks injunctive relief pursuant to Section 10(j) of the National Labor Relations Act ("NLRA"), pending the final disposition of its unfair labor practices suit against respondent, Pressroom Cleaners, Inc., before the National Labor Relations Board. For the following reasons, petitioner's motion will be granted.

## BACKGROUND

Pressroom began cleaning the offices of the Hartford Courant at 285 Broad Street in Hartford, Connecticut, on December 12, 2011. The offices were previously cleaned by Capitol Carpet & Specialty, Inc. ("Capitol"). Local 32BJ had long represented the Capitol workers, and Capitol and Local 32BJ were parties to a collective bargaining agreement covering the workers at the Courant site. There were eight Capitol employees at the site, including Epifania DeJesus, Emilio Figueroa, Razmik Hovhannisayn, Daniel Korzeniecki, Mariana Lubowicka, and Anahit Zhamkochyan. DeJesus had worked at the Courant for fifteen years; Lubowicka had worked

there fourteen years; Hovhannisayn had worked there nine years; Zhamkochyan had worked there eight years. Both Hovhannisayn and Zhamkochyan testified that they are planning to retire within a year.

Before taking over the account, Pressroom held a meeting with the Capitol workers. Pressroom's Vice President and half-owner, Steve Lilledahl, and his daughter, Sierra McSharry, described this meeting as an interview. However, neither Lilledahl nor McSharry asked the workers any questions, and several workers said nothing during the meeting. DeJesus and Lubowicka testified that Lilledahl told them that Pressroom doesn't work with unions and doesn't want the Union. Lilledahl made the following admission regarding his comments at the meeting: "I would have introduced us and explained that we were non-union because I know that they were [union]. I didn't want them disillusioned or not understanding what we were offering them."

Pressroom admits that the Capitol workers made clear their interest in working for Pressroom. Instead of hiring the Capitol workers, who had applied one month earlier, Pressroom scrambled to put a crew together in the week before it took over the account. One worker, Juan Cruz, who had no prior experience as a cleaner, was hired based on the recommendation of his neighbor Elias Rosario, but Rosario had not started working for Pressroom and had never previously worked with Cruz. Pressroom couldn't even locate applications or any documents for two of the workers it hired, Wesley Mendez and Joel Buhanji. Another worker, Heriberto Ramirez, was placed on the payroll and then fired following a background check mandated by the Courant. Several of the workers Pressroom initially hired either quit or were fired within a few weeks.

In January and February of 2012, Local 32BJ tried to reach out to the newly hired Pressroom employees, approaching them in front of the Courant building. Pressroom's on-site supervisor, Francisco Teran, responded by repeatedly threatening workers with termination if they spoke to Local 32BJ representatives. A former Pressroom employee, Madelyn Castro, testified that Teran told her that the employees who previously worked at the Courant were fired because of their union activity. Union representative Wojciech Pirog testified that Teran told him that Pressroom would fire any worker who signed a Union authorization card. Pressroom contends that Mr. Teran's union threats, "although unfortunate," do not indicate anti-union animus by Pressroom in its decision not to hire the union applicants - because that decision preceded Mr. Teran's threats.

Pressroom has offered shifting explanations for its refusal to hire Capitol employees. Its February 2012 position statement focused on Pressroom's concern about the Capitol employees' flexibility. However, Pressroom made no inquiry as to the Capitol employees' flexibility. Furthermore, when pressed by Judge Fish, McSharry, who oversaw the hiring process, admitted that flexibility played no role in Pressroom's decision.

Petitioner has moved for an injunction predicated on the conclusion that there is reasonable cause to believe that respondent engaged in, and is engaging in unfair labor practices, and that to prevent nullification of the purposes of the NLRA, an interim order should issue requiring respondent to cease and desist from engaging in such unfair labor practices and to take certain affirmative actions, namely, offering employment to the former Capitol employees.

**DISCUSSION**

To issue a preliminary injunction under Section 10(j) of the NLRA, a court must find (1) "reasonable cause to believe that unfair labor practices have been committed," and (2) "that the requested relief is just and proper." Hoffman v. Inn Credible Caterers, Ltd., 247 F.3d 360, 364-65 (2d Cir. 2001).

**Reasonable Cause**

In deciding whether there is reasonable cause to find and NLRA violation, courts generally defer to the Board's assertions. Accordingly, with regard to issues of fact, courts will sustain the Board's position "unless the court is convinced that it is wrong." Danielson v. Int'l Org. Of Masters, 521 F.2d 747, 751 (2d Cir. 1975). Likewise, courts accept the Board's statement of the law unless such a position is clearly incorrect. Id. Although courts accord the Board deference due to its expertise, "to give the Regional Director's position great weight is not to make it dispositive." Silverman v. Imperia Foods, Inc., 646 F. Supp. 393, 398 (S.D.N.Y. 1986). Rather, the Board must "come forward with evidence sufficient to spell out a likelihood of violation" in order to demonstrate reasonable cause. Danielson v. Joint Bd. Of Caoat, Suit and Allied Garment Workers' Union I.L.G.W.U., 494 F.2d 1230 (2d Cir. 1974). The Board's allegation of an NLRA violation is supported by reasonable cause where the factual assertions and legal positions are rational. See Danielson, 521 F.2d at 1245.

In considering whether to grant the requested section 10(j) relief, "[t]he court need not make a final determination that the conduct in question is an unfair labor practice. It need find only reasonable cause to support such a conclusion. Appropriate deference must be shown to the judgment of the NLRB, and a district court should decline to grant relief only if convinced that

the NLRB's legal or factual theories are fatally flawed." Hoffman v. Polycast Tech. Div. of Uniroyal Tech. Corp., 79 F.3d 331, 333 (2d Cir.1996).

Here, respondent has offered contrary explanations for its refusal to hire Capitol employees and does not deny that their supervisor discouraged labor organization membership. There is reasonable cause to believe that Pressroom unlawfully discriminated against the Capitol employees in order to avoid a bargaining obligation with Local 32BJ in violation of 29 U.S.C. Section 158(a)(3): "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." Therefore, petitioner has satisfied the first prong of Section 10(j).

**Just and Proper**

In the Second Circuit, Section 10(j) is deemed just and proper "when it is necessary to prevent irreparable harm or to preserve the status quo." Inn Credible Caterers, 247 F.3d at 368. "The appropriate test for whether harm is irreparable in the context of § 10(j) successorship cases is whether the employees' collective bargaining rights may be undermined by the successor's unfair labor practices and whether any further delay may impair or undermine such bargaining in the future." Id. at 369.

Respondent argues that "even if Pressroom's conduct is found unlawful, it will cause no irreparable harm." Respondent also asserts that the Union employees "have expressed no desire to return to their previous employment." However, petitioner maintains that this assertion is "simply false." The Union employees want to return to their jobs at the Hartford Courant. Indeed, prior to submitting a petition to this Court requesting injunctive relief, it was incumbent on the Regional Director to discern the status of the displaced workers and to inquire about their

interest in taking a position with respondent if an injunction was granted.  All six of the eligible Union employees expressed to the Regional Director that they would accept the opportunity to work for respondent under the same terms and conditions of employment subject to collective-bargaining.

Furthermore, petitioner makes clear that, as time elapses, the likelihood increases that the workers will scatter and find themselves in different circumstances that prevent them from returning to the Courant, despite their current desire to do so.  The Court agrees that an injunction is just and proper in order to prevent such irreparable harm.  Therefore, petitioner has satisfied the second prong of Section 10(j).

## **CONCLUSION**

For the foregoing reasons, petitioner's motion for preliminary injunction is GRANTED. The injunction order will be filed concurrently.

Dated this 12th day of December, 2012, at Bridgeport, Connecticut.

_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE